## Rudd, et al. v. Turner, et al.

(Decided February 1, 1911.)

### Appeal from Jefferson Circuit Court
### (Chancery Branch, First Division).

Commissioner's Sale of Property—Exceptions to Sale—Inadequacy of Price—Sale Will not be Set Aside for Inadequacy of Price.— The exceptions to commissioner's sale of property were properly overruled where they were not sustained by the evidence and where the things complained of did not affect the sale. The question of the raise by the Board of Equalization has no merit, and the inclusion of the taxes by the commissioner, while an error, was not material, the property bringing $14,000 less than the debt, interest and costs; while in the matter of madequacy of price this court will not set aside a sale because of inadequacy of price alone.

H. G. BEDDINGER, BENNETT H. YOUNG and D. M. RODMAN for appellant.

H. H. NETTLEROTH for appellees.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

Rebecca S. Turner instituted this action in equity to foreclose a mortgage lien for $40,700.00 on property in Louisville located on the corner of Third and Main streets. Appellant Anna R. Taylor filed an answer setting forth a few claims which she alleged they were entitled to be credited with. The lower court refused to allow the claims, and appellants' counsel strenuously contend on this appeal for one of them, to-wit, $150.00, which was paid by the Fidelity Trust Company before the execution of the note for $40,700.00. If it be true that the Trust Company paid that sum before the execution of the note, she is right. The Fidelity Trust Company was the agent of the Rudds; and one of them had executed a mortgage note before the execution of the note for $40,700.00, coupons of $150.00 each attached. The Trust Company's accounts show that it had paid one of these coupons with its interest, amounting to one hundred and sixty-four dollars and some cents, on April 29, 1901. If that statement is correct, the lower court erred in not allowing the credit for that amount; but from all the proof we are satisfied that the Trust Company erred in that entry in fixing the date as 1901, when it should have been 1900. This is very clearly shown by the testi-

mony of F. J. Bacon, the agent of Mrs. Turner, Mrs.
Anna R. Taylor and the officers of the Trust Company.
Therefore, the lower court did not err in this matter.

The lower court rendered a verdict directing a sale
of the property, but before making the sale he appointed
two commissioners to divide the property into lots, which
they did and without regard to the buildings upon it.
They divided the property into seven lots and the court
directed the commissioner to sell the lots separately for
all they would bring, or as many of them as was neces-
sary to pay the debt, interest and cost, and then directed
a sale of the whole for that purpose, and to accept the
bid most advantageous to the defendants. After this
judgment was rendered, appellee Mrs. Turner and one
of the Rudds died, and the action was revived in the
name of Mrs. Turner's executor and against the heirs
of the deceased Rudd, and another sale was ordered
upon the same terms. The commissioner advertised the
property for sale as directed by the judgment, but before
the date of sale, the heirs moved the court to change the
judgment, and instead of selling the lots separately first
and then as a whole, to sell them as a whole first and then
separately. They filed several affidavits with the motion
and agreed that the property could be sold under the
advertisement already made, but the court overruled the
motion. A few days after this motion was made, they
made another asking that the judgment be amended so
as to sell several of the lots together for what they would
bring, and then the whole. The court granted this
motion and a sale was made in accordance therewith and
the property brought $43,010.00, about $14,000.00 less
than the note, interest, cost and taxes. The property
was appraised at $63,000.00. The heirs filed exceptions
to the report of sale and asked the court to set it aside
for the following reasons: First, because the property
was not appraised according to law; second, because
three days before the sale the commissioner who was to
make the sale, published an interview in the Louisville
Evening Times, a newspaper published in that city,
which had a tendency to reduce the market price of
the property; third, because the sale was made at a time
when the State Board of Equalization had increased the
tax rate on property in Jefferson county 25 per cent.
which operated to reduce the value of the property;
fourth, because the court erred in refusing to amend the
judgment as requested by them, and that they agreed to
the change made in desperation and distress; fifth, the

commissioner erred in advertising that there were $57,-556.79 to be raised as that was too much, and that the commissioner included $1,322.45 for city, county and State taxes; sixth, that the property brought only $43,-010.00, when it was worth at the time of the sale twice that much. The first exception is not sustained by the proof. The persons who appraised the property acted fairly and according to their best judgment. The second exception is based upon the following matters. It seems that Howard Taylor, a son of appellant Anna R. Taylor, was representing his mother and the other heirs; that he undertook to make the property bring a full price by advertising it extensively. He formulated an advertisement boosting the property, in which he described the location, the value of it, the cost of the buildings upon it and stated that the title was perfect, and used the name of Williams, the commissioner in such a way as the casual reader would have understood that it was the commissioner saying those things. The commissioner saw these posters and advertisements and submitted to an interview which was published in the paper before mentioned. He stated in the interview that he was not the author of the advertisements and used this language:

"Now I have nothing to say as to the truth or falsity of the statements contained in these unauthorized advertisements, but merely wish to repudiate them as coming from me, and to say that as commissioner I don't propose to be put in the attitude of either commending or criticising adversely any property sold through my office."

The parties responsible inadvertently placed the commissioner in a false light. Every word they said about the property might have been true, but it certainly would have been improper for him to have affirmed them, or, if false, for him to have denied them. We are confident that the parties responsible for the posters and advertisements did not mean to place the commissioner in a false attitude. They only attempted to interest the public in the property so that it might bring a good price at the sale, their actions, however, did have that effect and he did no wrong in attempting to relieve himself. He said nothing in the interview that was improper, or that would have a tendency to decrease the value of the property. The third exception, that is the tentative raise of the Board of Equalization of 25 per cent. which was afterwards reduced to 12 1-2 per cent. has no merit. This was done by law, none of the parties to this action

had anything to do with it and was a circumstance for which none of them was in anywise responsible. The fourth exception, the change in the judgment causing an alleged sacrifice of the property, was made at the request of appellants, but they say that it was made while they were in distress and therefore they ought not to be held responsible for it. We have been unable to see how the change affected the sale in any way. With reference to the fifth exception, that is that the property was advertised for sale to pay a debt which was too much by $1,323.54, the amount of the state, county and city taxes. The judgment directed the commissioner to sell the property for the debt, interest, costs and to ascertain the amount of the taxes due on the property and place them in also. There is no question that the taxes were due on the property, but it is claimed that the commissioner had no right to ascertain them; that the court alone had such power. It is not necessary for us to consider this question as the property brought about $14,000.00 less than the debt and appellants have no cause to complain, even if it were an error of the commissioner and court. The last exception is that the property was sold for an amount not more than one-half its value. This court has often decided that a commissioner's sale will not be set aside because of inadequacy of price alone for which the property sold. Four or five witnesses testified, in effect, that they were surprised at the small amount for which the property sold. Some of them fixed the value of the property at $75,000.00 and some at $100,000.00. The same number of witnesses or more stated that the property brought its value and that it would not bring more if a sale was reordered.

Under these circumstances, and in view of what this court has heretofore decided, we cannot reverse the judgment of the lower court, and it is, therefore, affirmed.